## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SARAH CROSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-24-00633-JD |
| | ) |
| SARAH BRESHEARS, in her | ) |
| individual capacity, | ) |
| | ) |
| Defendant. | ) |

## <u>ORDER</u>

Before the Court is Defendant Sarah Breshears's Motion to Dismiss ("Motion").

[Doc. No. 12]. Breshears moves to dismiss Plaintiff Sarah Croston's Amended Complaint

[Doc. No. 8] under Federal Rules of Civil Procedure 8 and 12(b)(6). Croston filed a

response in opposition ("Response") [Doc. No. 13] to which Breshears replied [Doc. No.

14]. For the reasons stated below, the Court grants the Motion in part and denies it in part.

## I.    <u>BACKGROUND</u>

Sarah Croston is a certified nursing assistant ("CNA"), and she alleges that her

employment was terminated in violation of federal and state law because she made a post

on Facebook. Accepting as true the well-pleaded facts in the Amended Complaint, as of

June 2023, Ms. Croston was working as a CNA for Total Medical. Am. Compl. ¶¶ 5, 7.

She was assigned to work at a facility in Talihina, Oklahoma, that provided long-term

care to veterans. *Id.* ¶¶ 5, 9. Around June 2023, word spread that the veterans facility was

closing, which drew the attention of the public. *Id.* ¶ 9. A "Save the Talihina Veterans

Center" group formed, and the media addressed the treatment of veterans at the center in

multiple newspaper and television reports. *Id.* For example, the Oklahoma Educational Television Authority televised a report covering the "forced movement of veterans from the facility." *Id.*

In late June 2023, Ms. Croston posted on Facebook. *Id.* ¶ 7. Her post stated "that the facility is sending out residents Thursday (yesterday) and that 'none of the guys wanted to go now they are scared and confused and don't know what to do. Nobody is being honest with them and it's heartbreaking. They deserve better!'" *Id.*; *see also id.* ¶ 9 (alleging she was "commenting on issues of mistreatment of veterans assigned to long-term care facilities"). The next day, Sarah Breshears, a program administrator for the State of Oklahoma who manages certain veterans facilities, reached out to Total Medical staff. *Id.* ¶¶ 6–7. Ms. Breshears stated that "Sarah Croston posted on social media 23 hours ago," and her post was "shedding a negative light on the agency, center, and Administration." *Id.* ¶ 7. The post purportedly violated the Oklahoma Department of Veterans Affairs' ("ODVA") social media policy, which prohibits employees from "discussing in any forum or social media information pertaining to release dates and pending reorganizations." *Id.* ¶ 8. The policy further instructs employees to "[c]onfine social networking to matters unrelated to the ODVA, if necessary, to ensure compliance with security requirements and other laws." *Id.* (alteration in original). Believing Ms. Croston's post to violate these policies, Ms. Breshears requested that Total Medical staff

"notify Sarah Croston that [her] contract [is] ending effective today." *Id.* ¶ 7. As a result, Ms. Croston was terminated effective June 29, 2023. *Id.* ¶ 10.[1]

Croston originally sued Breshears and the State of Oklahoma *ex rel.* the Department of Veterans Affairs in state court. *See* [Doc. Nos. 1-1 and 1-2]. Breshears removed the action [Doc. No. 1], and Croston later filed the Amended Complaint, which names only Breshears in her individual capacity as a defendant. Am. Compl. at 1. Croston raises two claims against Breshears. First, she raises a claim under 42 U.S.C. § 1983, alleging that Breshears retaliated against Croston by firing her because of her speech in violation of the First Amendment. *Id.* ¶ 18. Second, Croston brings a state-law claim for tortious interference, alleging that Breshears unlawfully interfered with Croston's employment in bad faith and in violation of Oklahoma's public policy. *Id.* ¶ 19. For relief, Croston seeks compensatory and punitive damages, as well as "a declaration that the social media policy applied by Ms. Breshears and adopted by the State is an unconstitutional prior restraint on the free speech rights of Ms. Croston and all others subject to such policy." *Id.* at 4.

---

[1] The Amended Complaint includes other allegations of retaliation for Ms. Croston's speech, *see* Am. Compl. ¶¶ 13–14, but the parties do not focus on these allegations in their briefing on the Motion, so the Court does not address them in the first instance. *See supra* n.2.

## II.    LEGAL STANDARDS

### A.    Motions to Dismiss

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under this standard, the Court accepts all well-pleaded facts as true and views them in the light most favorable to the nonmoving party. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court must "draw on its judicial experience and common sense" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 556 U.S. at 678–79. "In other words, dismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017).

### B.    Qualified Immunity

Section 1983 provides a federal cause of action against a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Under the doctrine of qualified immunity, when an official is sued under § 1983 in their individual capacity,

4

they "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Once a defendant raises qualified immunity in a motion to dismiss, the burden shifts to the plaintiff to show: (1) the plaintiff has alleged facts that make out a violation of a constitutional right, and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019) (discussing the standard for qualified immunity at the pleading stage). Judges are "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation modified). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (alteration in original) (quoting *al-Kidd*, 563 U.S. at 743). "A plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to

be as the plaintiff maintains.'" *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015)

(quoting *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010)).

The "clearly established" standard "do[es] not require a case directly on point, but

existing precedent must have placed the statutory or constitutional question beyond

debate." *al-Kidd*, 563 U.S. at 741. The Supreme Court has "repeatedly told courts not to

define clearly established law at too high a level of generality." *City of Tahlequah v.

Bond*, 595 U.S. 9, 12 (2021). Nevertheless, the "analysis is not a 'scavenger hunt for prior

cases with precisely the same facts,' and 'a prior case need not be exactly parallel to the

conduct here for the officials to have been on notice of clearly established law.'" *Est. of

Smart ex rel. Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (citations

omitted).

"Although qualified immunity defenses are typically resolved at the summary

judgment stage, district courts may grant motions to dismiss on the basis of qualified

immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "[T]he proper

standard for evaluating dismissal in a qualified immunity case is the normal standard

[courts] apply to dismissals generally." *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th

Cir. 2006). At the pleading stage, that means that "plaintiffs must allege facts sufficient to

show (assuming they are true) that the defendants plausibly violated their constitutional

rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*,

519 F.3d 1242, 1249 (10th Cir. 2008). Plaintiffs bear a lighter burden when attempting to

overcome qualified immunity raised in a motion to dismiss than they do at summary

judgment. At the pleading stage, "it is the defendant's conduct *as alleged in the complaint*

that is scrutinized for 'objective legal reasonableness,'" whereas, at summary judgment, "the plaintiff can no longer rest on the pleadings and the court looks to the evidence before it." *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (citation omitted). *But see Robbins*, 519 F.3d at 1249 (reasoning that "[t]he *Twombly* standard may have greater bite" in the context of § 1983 suits against individual state actors to reflect "the special interest in resolving the affirmative defense of qualified immunity 'at the earliest possible stage of a litigation.'" (quoting *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987))).

## III.  ANALYSIS

Breshears moves to dismiss the Amended Complaint on several grounds. She argues that Croston's First Amendment retaliation claim is both factually and legally insufficient, as it is not pleaded with enough specificity and the speech against which Breshears allegedly retaliated did not address a matter of public concern. Because Croston has failed to state a claim for a constitutional violation, Breshears asserts that she is entitled to qualified immunity. Further, Breshears contends that Croston cannot obtain the declaratory relief she seeks because the State of Oklahoma is not a party to this action and Croston cannot assert a claim on behalf of "all others subject to [ODVA's] policy." Motion at 12 (quoting Am. Compl. at 4). Lastly, Breshears argues that Croston has not stated a claim for tortious interference under Oklahoma law.

### A.  Croston has pleaded a First Amendment retaliation claim with sufficient particularity to satisfy Rule 8.

Breshears argues that Croston has not stated a claim with enough specificity to provide Breshears with sufficient notice of the claim against her. According to Breshears,

"Plaintiff solely makes conclusory allegations that Breshears wrongfully retaliated against Plaintiff for her alleged speech." Motion at 5.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Each allegation must be simple, concise, and direct. No technical form is required." Fed. R. Civ. P. 8(d)(1). In other words, "to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). If a complaint alleges these elements, that "enable[s] the legal system to get weaving—permitting the defendant sufficient notice to begin preparing its defense and the court sufficient clarity to adjudicate the merits." *Id.*

The Amended Complaint contains sufficient factual allegations to put Breshears on notice of the claims raised against her. Croston alleges that, in June 2023, Breshears requested that Total Medical terminate Croston's employment contract because Breshears was retaliating against Croston based on Croston's Facebook post from the day before. Am. Compl. ¶¶ 7, 10. The Amended Complaint alleges that Croston's post reported that "the facility is sending out residents," "none of the guys wanted to go," "[n]obody is being honest with them," and "[t]hey deserve better!" *Id.* ¶ 7. Croston further alleges that Breshears explained Croston's termination was due to her post, which purportedly violated ODVA's social media policy. *See id.* ¶¶ 7, 8. Croston alleges that this conduct violated her rights under the First Amendment, *id.* ¶ 18, and she explains that as a result,

8

she suffered lost wages and emotional distress, *id.* ¶¶ 10, 20–21. The Amended

Complaint may not be replete with details, but these allegations provide a short and plain

statement of Croston's First Amendment claim against Breshears. Rule 8 requires no

more than that.

> **B.      Breshears is not entitled to qualified immunity at the pleading stage
> because Croston has plausibly alleged a violation of clearly established
> law.**

The First Amendment provides that "Congress shall make no law . . . abridging the

freedom of speech." U.S. Const. amend. I; *see also Gitlow v. New York*, 268 U.S. 652,

666 (1925) (incorporating the First Amendment against the states via the Fourteenth

Amendment). It is well established "that a public employee does not relinquish First

Amendment rights to comment on matters of public interest by virtue of government

employment." *Connick v. Myers*, 461 U.S. 138, 140 (1983) (citing *Pickering v. Bd. of Ed.*

*of Twp. High Sch. Dist. 205*, 391 U.S. 563 (1968)). At the same time, however,

"government offices could not function if every employment decision became a

constitutional matter." *Id.* at 143. Therefore, in evaluating a First Amendment retaliation

claim brought by a public employee, the Court must "arrive at a balance between the

interests of the [employee], as a citizen, in commenting upon matters of public concern

and the interest of the State, as an employer, in promoting the efficiency of the public

services it performs through its employees." *Pickering*, 391 U.S. at 568.

To strike this balance, courts apply a five-part test derived from the Supreme

Court's decisions in *Pickering* and *Garcetti v. Ceballos*, 547 U.S. 410 (2006). A plaintiff

must establish five elements to satisfy the *Garcetti*/*Pickering* test:

(1)   their speech was not made pursuant to their official duties;

(2)   their speech was on a matter of public concern;

(3)   the government's interests as the plaintiff's employer in promoting the efficiency of the public services it provides do not outweigh the plaintiff's free speech interests;

(4)   the plaintiff's speech was a substantial or motivating factor in the adverse employment action taken against them; and

(5)   the government would not have reached the same employment decision absent the plaintiff's speech.

*Brown v. City of Tulsa*, 124 F.4th 1251, 1267 (10th Cir. 2025) (citations omitted).

Breshears only challenges Croston's First Amendment claim on the second element of the *Garcetti*/*Pickering* test.[2] Breshears asserts that Croston did not speak on a matter of public concern because her speech "was addressing her workplace conditions and internal personnel disputes and disagreements regarding the dissemination of information to residents of the ODVA facility." Motion at 8. In response, Croston argues that "the treatment of veterans in a residential facility is surely a matter of public concern, because discussion of how a governmental agency carries out its functions is a matter of public importance." Response at 5. Accordingly, the Court will limit its analysis to determining whether Croston's speech addressed a matter of public concern and, if so,

---

[2] *Cf. United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (explaining that "[i]n our adversarial system of adjudication, we follow the principle of party presentation [and] . . . . rely on the parties to frame the issues for decision").

10

whether that was clearly established in June 2023. *See Avant v. Doke*, No. 21-7031, 2022 WL 2255699, at \*5 (10th Cir. June 23, 2022) (unpublished) (explaining the Tenth Circuit's "element-by-element approach" to the qualified immunity analysis when the *Garcetti/Pickering* test is at issue); *Singh v. Cordle*, 936 F.3d 1022, 1034–36 (10th Cir. 2019) (discussing only the second *Garcetti/Pickering* element when considering whether plaintiff met his burden on the "clearly established" prong of the qualified immunity analysis).

          1.     <u>Croston has plausibly alleged that her speech addressed a matter of public concern.</u>

"Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (first quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983); and then quoting *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004)). To determine "[w]hether an employee's speech addresses a matter of public concern," the Court must look to "the content, form, and context of a given statement." *Connick*, 461 U.S. at 147–48. "In considering content, form, and context, no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said." *Snyder*, 562 U.S. at 454.

When assessing the content of a particular statement, "the fundamental inquiry is whether the plaintiff speaks as an employee or as a citizen." *David v. City & Cnty. of*

*Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996). For example, a plaintiff speaks as a citizen addressing matters "of public import" when her speech helps the public evaluate the performance of public officials, informs the public as to how a public entity is "discharging its governmental responsibilities," or "seek[s] to bring to light actual or potential wrongdoing or breach of public trust." *Connick*, 461 U.S. at 148. In contrast, if speech addresses a "personnel decision" or "an employee grievance concerning internal office policy," it deals only with internal workplace disputes that are of purely personal interest. *See id.* at 147, 154. Moreover, "a public concern exists only when the speech contains enough specificity to help the public evaluate governmental conduct," so "[t]o determine whether the speech is specific enough to help the public," the Court must "look beyond the subject matter to focus on 'what is *actually said*.'" *Rogers v. Riggs*, 71 F.4th 1256, 1261 (10th Cir. 2023) (quoting *Leverington v. City of Colo. Springs*, 643 F.3d 719, 727 (10th Cir. 2011)).

As for the context and form of the speech, the Court must consider "the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest." *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir. 2000). "It is not enough . . . that the public interest was *part* of the employee's motivation." *Singh v. Cordle*, 936 F.3d 1022, 1035 (10th Cir. 2019) (emphasis added). Rather, "the relevant legal question [is] whether the employee's *primary* purpose was to raise a matter of public concern." *Id.* "When an individual's interest as an employee predominates over an interest as a member of the public, the concern is private rather than public." *Rogers*, 71 F.4th at 1262.

Looking first to the content of the speech, Croston's post stated that the Talihina veterans facility was "sending out residents" and that "none of the guys wanted to go now they are scared and confused and don't know what to do." Am. Compl. ¶ 7. "Nobody is being honest with them and it's heartbreaking," she continued. "They deserve better!" *Id.* Croston's speech alleged that the facility was sending out residents against their will without properly communicating with them. Thus, the Court can draw the reasonable inference that Croston's speech informed the public about how the facility—a state institution—was discharging its responsibilities to its residents, and she disclosed potential wrongdoing against these resident-veterans. Accordingly, her speech addressed a matter of public concern rather than a private workplace dispute. The allegations regarding the numerous news reports on the veterans center's closing bolsters this conclusion, as the facility's closing and its treatment of veterans were evidently of legitimate news interest to the community.

The form and context of Croston's speech also weigh in favor of concluding that it addressed a matter of public concern. The form of Croston's speech—a Facebook post— is designed to reach the public and address matters beyond mere employment disputes. *See Hernandez v. City of Phoenix*, 43 F.4th 966, 978 (9th Cir. 2022) ("We agree with the Fourth Circuit that 'publicly posting on social media suggests an intent to "communicate to the public or to advance a political or social point of view beyond the employment context."'") (quoting *Liverman v. City of Petersburg*, 844 F.3d 400, 410 (4th Cir. 2016)). Nothing in the Amended Complaint suggests that Croston's motive in making her post was to air out a personal workplace grievance; rather, the Court can draw the reasonable

inference that her primary motivation was to raise public awareness of the facility's

treatment of its residents. Considering the media attention on the facility's closing and the

formation of a "Save the Talihina Veterans Center" group, the broader context in which

Croston made her post fortifies the conclusion that she was speaking on a matter of

general concern to the public rather than raising a private workplace grievance.

Therefore, the content, form, and context of Croston's speech all indicate that she

was speaking on a matter of public concern. Accordingly, Croston has plausibly alleged

that her speech was on a matter of public concern.

> 2.    At the time of Breshears's alleged misconduct, Tenth Circuit
> precedent clearly established that Croston's speech was on a matter
> of public concern.

Next, the Court must determine if it was clearly established that Croston's speech

was on a matter of public concern. To satisfy her burden at the second prong of the

qualified immunity analysis, Croston must either identify an "on-point Supreme Court or

published Tenth Circuit decision" or show that "the clearly established weight of

authority from other courts" would have made clear to a reasonable official in Breshears's

position that Croston's speech was on a matter of public concern. *Quinn v. Young*, 780

F.3d 998, 1005 (10th Cir. 2015) (citation omitted).

In her response to the Motion, Croston argues that the First Amendment right

asserted in her retaliation claim "is clearly set out by the *Garcetti/Pickering* analysis."

Response at 6. However, "[a] general test defining the elements of a constitutional

violation, such as the *Garcetti/Pickering* test, will not provide clearly established law in

anything but 'an obvious case.'" *Bailey v. Indep. Sch. Dist. No. 69*, 896 F.3d 1176, 1184

(10th Cir. 2018) (quoting *White v. Pauly*, 580 U.S. 73, 80 (2017)). This case is not an "obvious case" in which *Garcetti* and *Pickering* will suffice to make a showing of clearly established law.

Croston further cites *Snyder v. Phelps*, 562 U.S. 443, 453 (2011), and *Lane v. Franks*, 573 U.S. 228, 241 (2014), to show that it is clearly established that matters that are "'a subject of legitimate news interest . . .' are protected under the public concern umbrella." Response at 6. In addition, Croston's Response raises *Andersen v. McCotter*, 100 F.3d 723, 729 (10th Cir. 1996), which notes that "[t]he law has been clearly established since 1968 that public employees may not be discharged in retaliation for speaking on matters of public concern, absent a showing that the government employer's interest in the efficiency of its operation outweighs the employee's interest in the speech." *See* Response at 7 (citing *Andersen*). But "[t]hese statements merely repeat the generic *Garcetti/Pickering* standard." *Knopf v. Williams*, 884 F.3d 939, 946–47 (10th Cir. 2018). For Croston to meet her burden, "the clearly established law must be 'particularized' to the facts of the case." *White*, 580 U.S. at 79 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Because Croston offers only broad, generalized statements of law, she has not demonstrated that it was clearly established in June 2023 that her speech addressed a matter of public concern.

Nevertheless, "[w]hether law is clearly established is a legal question, reviewed de novo, with full knowledge of the law." *Cortez v. McCauley*, 478 F.3d 1108, 1122 n.19 (10th Cir. 2007) (en banc) (citing *Elder v. Holloway*, 510 U.S. 510, 513–14, 516 (1994)); *see Elder*, 510 U.S. at 516 ("A court engaging in review of a qualified immunity

judgment should therefore use its full knowledge of its own and other relevant precedents." (citation modified)).[3] Accordingly, the Court has conducted its own survey of the caselaw, and from that survey, the Court concludes that clearly established law extant in June 2023 would have put a reasonable official in Ms. Breshears's position on notice that Ms. Croston's speech addressed a matter of public concern.

Ms. Croston has plausibly alleged that she was speaking out as a certified nursing assistant at the Talihina veterans facility about what she perceived to be the mistreatment of residents at the facility. As of June 2023, Tenth Circuit precedent clearly established that if a healthcare provider speaks out because she believes that those under her charge are being mistreated or receiving inadequate care, then her speech addresses a matter of public concern. The Tenth Circuit has held that "the quality of nursing care given to a patient involves a matter of public concern within the principles recognized in *Connick v.*

---

[3] Placing the onus on courts to locate cases that clearly establish a right strikes the undersigned as contrary to the Tenth Circuit's "well-settled rule that '[t]he *plaintiff* bears the burden of citing . . . what he thinks constitutes clearly established law.'" *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015) (first alteration in original) (quoting *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010)). Requiring courts to locate caselaw and determine whether a right is clearly established without the benefit of the parties' arguments also undermines the benefits of the adversarial system of justice, which "is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment). Nevertheless, this lower court is bound to follow the precedent of the Supreme Court and Tenth Circuit, which recently relied on *Elder* to "conduct [its] clearly established analysis with full knowledge of settled case law," despite the plaintiff's failure to identify such caselaw. *Baca v. Cosper*, 128 F.4th 1319, 1328 n.5 (10th Cir. 2025), *petition for cert. filed*, No. 24-1214 (U.S. May 29, 2025). Therefore, the Court will assess the "clearly established" prong of the qualified immunity analysis by looking to the full landscape of the law, including cases that neither party has identified.

*Myers.*" *Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 593 (10th Cir. 1994),

*overruled on other grounds by Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1194 (10th

Cir. 1998). The *Ramirez* court noted that "[t]he strong public policy of the state for

protection of patients from abuse, and the concomitant duty of medical and nursing

personnel to afford such protection, is recognized repeatedly in Oklahoma law." *Id.* Thus,

the court held that a doctor and a nurse had a First Amendment right to file a grievance on

behalf of a "mental patient" whom they believed had been endangered by a mental health

aide's mistreatment of the patient. *Id.* at 587, 593–94.

    In *Johnsen v. Independent School District No. 3*, 891 F.2d 1485, 1487–88 (10th

Cir. 1989), a school nurse raised concerns about the school system's medication policy,

which she believed violated the Oklahoma Nursing Practice Act. Because her speech

dealt with the school district's medication policy, which "potentially impacts the health of

the children attending the school," the Tenth Circuit held that the nurse's "speech

sufficiently touch[ed] on a matter of public concern." *Id.* at 1490; *cf. Lee v. Nicholl*, 197

F.3d 1291, 1296 (10th Cir. 1999) (citing *Johnsen* to support the proposition that "[t]he

case law of this Circuit makes it amply clear public employee speech alleging a danger to

public health or safety is protected by the First Amendment"). Likewise, in *Paradis v.*

*Montrose Memorial Hospital*, 157 F.3d 815, 817 (10th Cir. 1998), two nurses complained

about a doctor's "unethical and illegal conduct" to hospital administrators. Specifically,

they alleged that the program director "based patients' treatment on their ability to pay,

practiced medicine without a license, engaged in insurance fraud, subjected patients and

staff to religious harassment, and sexually harassed staff." *Id.* at 818. The Tenth Circuit

held that "[t]hese are self-evidently matters of 'political, social, or other concern to the community.'" *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)).

Moreover, the Tenth Circuit has held that speech addressing the potential mismanagement of a health care facility addresses a matter of public concern even when patient care is not directly at issue. In *Schalk v. Gallemore*, 906 F.2d 491, 492, 495 (10th Cir. 1990), a patient accounts clerk at a hospital hand-delivered a letter detailing her concerns about "waste, inefficiency, and favoritism at the hospital" to members of the hospital's board of trustees. The Tenth Circuit held that the letter touched on matters of public concern because it "implicate[d] the fiscal policies of the [hospital] and attempt[ed] to disclose waste and wrongdoing." *Id.* at 496. In *Schrier v. University of Colorado*, 427 F.3d 1253, 1256–57 (10th Cir. 2005), a professor of medicine serving as the chair of the University of Colorado's Department of Medicine publicly spoke out against a proposal to move the university's Health Sciences Center to a new location. Because his speech "concerned the expenditure of public funds and the potential impact a relocation would have on patient care, education, and research," the circuit held that the professor's "speech addressing the use of public funds and regarding the objectives, purposes and mission of the University of Colorado and its medical school fall well within the rubric of 'matters of public concern.'" *Id.* at 1263.

In light of these precedents, it was clearly established as of June 2023 that a healthcare provider addresses a matter of public concern if she speaks out when she believes that those under her charge are being mistreated or receiving inadequate care. An employee of a healthcare facility likewise speaks on a matter of public concern if she

raises concerns that the facility is being mismanaged, particularly when such mismanagement could compromise patient care. Thus, it would have been clear to a reasonable official that Ms. Croston's speech was on a matter of public concern. Accordingly, Ms. Croston has overcome Ms. Breshears's assertion of qualified immunity at the pleading stage. Breshears's motion to dismiss Croston's First Amendment retaliation claim is denied.

### C.    Croston cannot sue Breshears in her individual capacity for declaratory relief.

Breshears moves to dismiss Croston's claim for declaratory judgment on two grounds. First, ODVA is not a party to this action, and the Court cannot declare a policy of a non-party unconstitutional. Motion at 11. Second, Croston purports to seek declaratory judgment on behalf of "all others subject to [ODVA's] policy," Am. Compl. at 4, but Croston "is limited to asserting only her own constitutional rights, not those of others." Motion at 12. Thus, Breshears argues, Croston's "claim for declaratory judgment is frivolous, undermines judicial efficiency, and must be dismissed." *Id.*

"Under § 1983, a plaintiff cannot sue an official in their individual capacity for injunctive or declaratory relief." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1214 (10th Cir. 2022). The only defendant to this action is Sarah Breshears, who is sued in her individual capacity. Am. Compl. at 1. Croston's request for declaratory relief arises only from her constitutional claim under § 1983, not her state-law tortious interference claim. *See id.* at 4. Therefore, Croston's claim for declaratory relief against Breshears in her individual capacity fails as a matter of law; Breshears's Motion is granted as to this claim,

which is dismissed with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

### D.     Croston has not stated a claim for tortious interference with a contractual relationship under Oklahoma law.

Breshears argues that Croston's tortious interference claim must fail because Breshears was acting on behalf of her employer, ODVA, which "was a party to the contract or business relationship with which Plaintiff claims Breshears interfered." Motion at 10. In addition, Breshears contends, Croston "has given no factual support to show that Breshears' actions were in bad faith, wrongful, or malicious." *Id.* at 11. In response, Croston contends that the Motion "does not challenge the sufficiency of Plaintiff's allegation of a tortious interference claim, but rather asserts the existence of additional facts—not in the pleadings—which would offer a defense." Response at 7. Further, Croston states, the Amended Complaint alleges that Breshears's "actions were taken in bad faith and constituted a tortious interference with Plaintiff's employment." *Id.*

"While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Thus, in evaluating the Motion, the Court considers the elements of a claim for tortious interference with a contractual relationship under Oklahoma law. The Oklahoma Supreme Court has set forth the elements of a tortious interference claim as "1) interference with a business or contractual right; 2) malicious

and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference." *Tuffy's, Inc. v. City of Okla. City*, 2009 OK 4, ¶ 14, 212 P.3d 1158, 1165. "The element of malice, for malicious interference, is defined as an unreasonable and wrongful act done intentionally, without just cause or excuse," and it "requires a showing of bad faith." *Id.*

Croston has not pleaded factual allegations that allow the Court to draw the reasonable inference that Breshears acted with malice. Croston contends that she has alleged Breshears acted in bad faith, citing the following allegations in the Amended Complaint: "[Breshears's] actions also constituted a tortious interference with the Plaintiff's employment and employment opportunities, which was motivated by bad faith and a violation of Oklahoma's public policy . . . ." Am. Compl. ¶ 19; *see also* Response at 7 (citing this paragraph of the Amended Complaint). But when "examining a complaint under Rule 12(b)(6)," the Court must disregard such conclusory statements "and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*, 671 F.3d at 1191.

Setting aside all conclusory statements, the Amended Complaint is devoid of factual allegations suggesting that Breshears acted with malice. Croston alleges that Breshears requested that Croston's employment contract be terminated because of Croston's Facebook post, which Breshears asserted violated ODVA's social media policy. Croston does not allege that Breshears harbored animus toward her, and the Amended Complaint lacks any allegations suggesting that Breshears acted unreasonably. Rather, the Amended Complaint suggests that Croston's purported violation of ODVA's social media

21

policy was the only reason for her termination. Breshears did not act unreasonably by relying on and enforcing the policy; she requested that Total Medical terminate Ms. Croston's employment contract based on what she reasonably believed to be just cause under the policy. Whether Ms. Croston's Facebook post *actually* provided just cause for her termination is, of course, the subject of her First Amendment claim. But Croston's allegations that Ms. Breshears enforced ODVA's policy by requesting Croston's termination, without more, are not enough to plausibly allege that Breshears acted in bad faith. Without plausible allegations of bad faith, the Amended Complaint fails to state a claim for tortious interference with a contractual relationship. Therefore, the Court grants the Motion to Dismiss Croston's malicious interference claim, which is dismissed without prejudice.[4]

## IV.    **CONCLUSION**

For these reasons, the Court DENIES Breshears's Motion to Dismiss [Doc. No. 12] as to Croston's First Amendment retaliation claim. The Court GRANTS the Motion to Dismiss Croston's claim for declaratory judgment and her state-law claim for tortious

---

[4] In her Response, Ms. Croston seeks "leave to amend" if the Court grants any part of the Motion. Response at 9–10. But a plaintiff cannot seek leave to amend a complaint in a response brief. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); LCvR7.1(c) ("A response to a motion may not also include a motion . . . made by the responding party."); LCvR15.1 (explaining that a party moving to amend a pleading must attach the proposed pleading as an exhibit to the motion); *see also Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697, 706 (10th Cir. 2014) ("We have recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion." (quoting *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999))).

interference. The declaratory judgment claim is DISMISSED with prejudice, and the tortious interference claim is DISMISSED without prejudice.

IT IS SO ORDERED this 30th day of June 2025.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE